[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14113

_____

In re: RODNEY DIXON DORAND,

Debtor.

_____

THE ALABAMA CREDITORS,

Plaintiffs-Appellants,

*versus*

RODNEY DIXON DORAND,

Defendant-Appellee.

_____

Appeal from the United States Bankruptcy Court
for the Northern District of Florida

D.C. Docket No. 3:21-bk-30205

———————————————

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether an individual retirement account is part of a debtor's bankruptcy estate. Creditors obtained a $1.6 million default judgment against Rodney Dorand. To satisfy the judgment, the creditors sought funds in Dorand's individual retirement account held by Morgan Stanley. Dorand argued that the funds were exempt from collection under state law, but an Alabama court rejected Dorand's argument and permitted Morgan Stanley to transfer the funds out of Dorand's account. Before Morgan Stanley transferred the funds, Dorand filed a bankruptcy petition under Chapter 7 and asserted that the retirement account was exempt property of his bankruptcy estate. The bankruptcy court agreed with Dorand. Because the Alabama judgment did not extinguish Dorand's interest in his account before he filed his bankruptcy petition, we affirm.

## I. BACKGROUND

Creditors sued Rodney Dorand in the Circuit Court of Tallapoosa County, Alabama, for damages arising from a failed condominium development. When Dorand failed to appear at trial, the state court entered a default judgment in favor of the creditors for $1.6 million. The default judgment was entered against

Dorand, the Rodney D. and Barbara H. Dorand Living Trust, and other entities.

The creditors began collection proceedings in state court. After they sought the funds in an individual retirement account that Dorand had established at Morgan Stanley, the state court issued a writ of garnishment to Morgan Stanley. Morgan Stanley appeared and filed an answer.

Dorand moved to quash the writ. He argued that the Alabama court lacked jurisdiction to seize the retirement account by garnishment because the account was located in Florida. Dorand also filed a claim of exemption for the retirement account under Alabama Rule of Civil Procedure 64A. He asserted that the retirement account was exempt from garnishment because it contained retirement funds. The creditors responded that the funds were not exempt because Dorand had failed to file an inventory, as required by Alabama procedural law, and had engaged in prohibited transactions, among other reasons.

The creditors later moved for alternative relief in the form of a creditor's bill. *See* ALA. CODE § 6-6-180. The motion argued that even if the state court's jurisdiction to garnish the retirement account were questionable, the state court has "indisputable power" to enter an order under section 6-6-180 to recover out-of-state property in the hands of a third party over whom the court has personal jurisdiction. Section 6-6-180 provides that when a judgment from any court has been issued against a defendant and is not satisfied, the judgment creditor may file a complaint against that

defendant "to compel the discovery of any property belonging to him, or held in trust for him, and to prevent the transfer, payment[,] or delivery" of that property to him. *Id.* The statute empowers the court to bring "any other party before it and adjudge such property, or the interest of the defendant" in the property "to the satisfaction of the sum due the plaintiff." *Id.*

The state court denied Dorand's claim of exemption on the ground that the creditors "filed a proper contest to the claim of exemption, making both procedural and substantive challenges." The state court entered judgment "against Morgan Stanley" for the full value of the retirement account. The creditors moved to amend the judgment after "Morgan Stanley's legal department request[ed] 'comfort' language" specifically stating that Morgan Stanley could "set off the judgment against any funds" in Dorand's individual retirement account. In January 2021, the state court amended the judgment to include Morgan Stanley's requested language.

The amended judgment was entered "against Morgan Stanley" in the amount of $856,622.39 as follows:

> The Judgment amount represents moneys [Morgan Stanley] has admitted holding in accounts owned by either Rodney Dorand individually or the [Dorand Living Trust] including an account designated as an Individual Retirement Account by Rodney Dorand. [Morgan Stanley] is authorized to set-off this payment from any funds in its possession and held for the

benefit of either Rodney Dorand individually or the [Dorand Living Trust]. This specifically includes the right of Morgan Stanley to set-off funds held in an account designated as an Individual Retirement Account. Rodney Dorand's claim of exemption as to retirement funds was denied by the Court at Document 450. Upon remittance of these funds to the Circuit Clerk of Tallapoosa County, Alabama[,] the judgment against [Morgan Stanley] will be satisfied.

Dorand moved in the trial court and state supreme court to vacate or stay execution of the judgment and for mandamus relief. The courts denied his motions. The amended judgment became non-appealable in February 2021. *See* ALA. R. APP. P. 4(a)(1).

Morgan Stanley liquidated the assets in Dorand's retirement account to $800,539.46 in cash and requested payment instructions. But Morgan Stanley never wired the funds to the clerk. The creditors allege that Dorand's counsel "obstructed collection" by threatening Morgan Stanley with litigation if Morgan Stanley transferred the funds.

In April 2021—with the funds still in his retirement account—Dorand filed a voluntary petition for Chapter 7 bankruptcy, *see* 11 U.S.C. §§ 701–784. He asserted that the retirement account was exempt property of his bankruptcy estate. The creditors objected. They argued that the retirement account was not part of the bankruptcy estate because the state court denied any claim of

exemption for those funds and because Dorand could not relitigate that issue.

The parties agreed that the bankruptcy court could determine the exemption issue based on the evidence filed by the parties. The evidence included testimony from Morgan Stanley's corporate representative. The representative testified that Dorand still owned the retirement account when he filed for bankruptcy.

After a hearing and extensive briefing, the bankruptcy court determined that the retirement account was Dorand's exempt property and that the Alabama judgment against garnishee Morgan Stanley "does not affect the [retirement account's] exempt status." The court also determined that Morgan Stanley did not obtain the right to setoff. The order explained that "Morgan Stanley may set off only if and when it pays the state court judgment," and payment "has not happened."

We granted the parties' joint petition for direct appeal. 28 U.S.C. § 158(d)(2)(A)(iii). And we later granted Morgan Stanley leave to file a brief as *amicus curiae* and to participate in oral argument.

## II. STANDARDS OF REVIEW

We review a bankruptcy court's legal conclusions *de novo* but its factual findings for clear error. *In re Bilzerian*, 100 F.3d 886, 889 (11th Cir. 1996). We review *de novo* the interpretation of the Bankruptcy Code. *In re Meehan*, 102 F.3d 1209, 1210 (11th Cir. 1997). And we review *de novo* a bankruptcy court's application of the *Rooker-*

*Feldman* doctrine and collateral estoppel. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1069 (11th Cir. 2013).

## III. DISCUSSION

We divide our discussion in four parts. First, we explain why the bankruptcy court had jurisdiction to decide Dorand's exemption claim. Second, we explain why the retirement account is part of Dorand's bankruptcy estate. Third, we explain why the Alabama judgment did not create a right to setoff. Last, we explain why neither the full faith and credit statute nor collateral estoppel bar the judgment of the bankruptcy court.

### A. The Bankruptcy Court Had Jurisdiction to Decide Dorand's Claim of Exemption.

The creditors argue that under the *Rooker-Feldman* doctrine, the bankruptcy court lacked jurisdiction to decide Dorand's claim of exemption. Dorand responds that the bankruptcy court's ruling did not violate *Rooker-Feldman* because he did not ask the bankruptcy court to overturn a state court judgment. We agree with Dorand.

*Rooker-Feldman* is a "narrow jurisdictional doctrine" that prohibits a party who loses in state court from "appeal[ing] that loss in a federal district court." *Behr v. Campbell*, 8 F.4th 1206, 1208 (11th Cir. 2021). The doctrine is named after two Supreme Court decisions, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983), that together hold that a federal district court may not review a state court civil judgment because only the Supreme Court of the United

States may exercise appellate jurisdiction over state court judgments in civil cases. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). The *Rooker-Feldman* doctrine "follows naturally from the jurisdictional boundaries that Congress has set for the federal courts." *Behr*, 8 F.4th at 1210.

The *Rooker-Feldman* doctrine "almost never" requires dismissal. *Id.* at 1212. A claim should be dismissed under *Rooker-Feldman* only when "a losing state court litigant calls on a district court to modify or 'overturn an injurious state-court judgment.'" *Id.* at 1210 (quoting *Exxon Mobil*, 544 U.S. at 292). Federal courts "do not lose subject matter jurisdiction over a claim 'simply because a party attempts to litigate in federal court a matter previously litigated in state court.'" *Id.* (quoting *Exxon Mobil*, 544 U.S. at 293).

The bankruptcy court's ruling did not implicate *Rooker-Feldman*. Neither party asked the bankruptcy court to "modify" or "overturn" the Alabama judgment. Instead, the parties disputed the *effect* of the judgment. The creditors argued that the judgment extinguished Dorand's interest in the retirement account, and Dorand responded that the judgment did not terminate his interest. But those arguments about the effect of the Alabama judgment are not invitations to overrule it.

### B. The Individual Retirement Account is Part of Dorand's Bankruptcy Estate.

Whether the individual retirement account is part of Dorand's bankruptcy estate turns on whether the Alabama judgment terminated Dorand's interest in the account. The creditors argue that the

Alabama judgment "fully and finally terminated" Dorand's rights to and interests in the retirement account. Dorand responds that he still had an interest in the account when he filed for bankruptcy. Because the Alabama judgment gave Morgan Stanley only a limited right to transfer Dorand's funds, and Morgan Stanley failed to exercise that right before Dorand filed for bankruptcy, we agree with Dorand.

"The commencement of a [Chapter 7 bankruptcy proceeding] creates an estate." 11 U.S.C. § 541(a). That estate includes, with limited exceptions, all of the debtor's "legal or equitable interests" in property, "wherever located and by whomever held," on the day the debtor files his bankruptcy petition. *Id.* § 541(a)(1); *In re Bracewell*, 454 F.3d 1234, 1237 (11th Cir. 2006). "'Property of the estate' is defined broadly." *In re Lewis*, 137 F.3d 1280, 1283 (11th Cir. 1998) (citing 11 U.S.C. § 541(a)(1)); *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983) ("Congress intended a broad range of property to be included in the estate."). But property in which the debtor has no property interest is *not* part of the bankruptcy estate. *See* 11 U.S.C. § 541(a)(1). Federal law determines whether a debtor's interest in property becomes property of the bankruptcy estate, and state law determines the nature and extent of that interest. *In re Thomas*, 883 F.2d 991, 995 (11th Cir. 1989).

The Alabama court entered judgment based on its authority under the creditor's bill statute. *See* ALA. CODE § 6-6-180. A creditor's bill is an "equitable proceeding brought by a creditor to enforce the payment of a debt out of property of his debtor." *Wyers*

*v. Keenon*, 762 So. 2d 353, 355 (Ala. 1999) (alterations adopted) (internal quotation marks omitted) (quoting *Creditor's Bill*, BLACK'S LAW DICTIONARY 369 (6th ed. 1990)). The Alabama statute permits a court to "bring any other party before it" and "adjudge . . . property, or the interest of the defendant" in the property "to the satisfaction of the sum due the plaintiff." ALA. CODE § 6-6-180. A judgment can alter a debtor's interest in his property. *See id.* (stating that a judgment can "prevent the transfer, payment[,] or delivery" of the debtor's property). But a judgment does not necessarily extinguish all of a debtor's interests in his property.

The Alabama judgment did not extinguish Dorand's interest in the funds in his retirement account. Indeed, the judgment states that Dorand still "own[s]" the account. Consistent with that understanding, Morgan Stanley's corporate representative testified that Dorand owned the account when he filed for bankruptcy.

The judgment "authorized" Morgan Stanley to "remit[]" certain funds to the state court clerk. But that language created only a limited right for Morgan Stanley. And the judgment specified that it would not be "satisfied" until Morgan Stanley "remitt[ed]" the funds to the clerk. It is undisputed that Morgan Stanley did not remit the funds before Dorand filed for bankruptcy. As other courts have ruled, the debtor's funds in a retirement account are property of a bankruptcy estate if the funds remain in the account, notwithstanding a state court turnover order, when the debtor files for bankruptcy. *See In re Quade*, 498 B.R. 852, 855–56 (N.D. Ill. 2013) (affirming bankruptcy court's determination that a retirement

account was property of a bankruptcy estate because the account manager had not transferred the funds out of the debtor's account before the debtor filed for bankruptcy); *In re Allen*, 203 B.R. 786, 793–94 (Bankr. M.D. Fla. 1996) (rejecting argument that an individual retirement account was not property of a bankruptcy estate because of a prepetition order directing the turnover of retirement funds).

The Alabama judgment was not a personal judgment against Morgan Stanley. The Supreme Court of Alabama has held that "when a creditor's bill is brought to reach a debtor's assets in the hands of a third person," the "general rule" is that "a personal judgment cannot be rendered against that third person." *Wyers*, 762 So. 2d at 355–56. So Morgan Stanley was not—and could not have been—obligated to pay the judgment from its own funds.

The creditors insist that the Alabama judgment "forever settled Dorand's and Morgan Stanley's rights and obligations with respect to the money held" in the account. But they do not identify any language in the judgment that achieved that result. The judgment on its face creates no *duty* for Morgan Stanley to transfer any funds.

The creditors rely on *In re Marona* to contend that the judgment terminated Dorand's interest in his account. *See* 54 B.R. 65 (Bankr. N.D. Ala. 1985). In *Marona*, a debtor was sued for damages arising from a car accident. *Id.* at 66. An Alabama statute required the debtor to deposit funds with the Department of Public Safety to satisfy any future judgments against him. *Id.* A companion statute provided that when deposited, those funds could be used only for

the payment of a judgment rendered against the depositor. *Id.* at 67. After judgment was entered against him, the debtor filed for bankruptcy and attempted to recover the deposited funds as property of his bankruptcy estate. *Id.* at 66. By that point, the funds had been remitted to the state court clerk in accordance with the judgment. *Id.* The bankruptcy court held that the debtor had no legal or equitable interest in the deposit because the statute stated that the funds were available only to pay a judgment against the depositor. *Id.* at 67.

*Marona* is distinguishable for at least two reasons. First, the statutory deposit scheme in *Marona* is materially different from the retirement account that Dorand maintained at Morgan Stanley. Dorand did not deposit funds under a statutory mandate that earmarked the funds for a single purpose. Instead, he deposited funds into an account that he owned and voluntarily created. Second, in *Marona*, the funds had been remitted to the state court clerk before the debtor filed for bankruptcy. Here, in contrast, Morgan Stanley did not remit the funds to the state court clerk before Dorand filed for bankruptcy.

The Alabama judgment might have *altered* Dorand's rights to the retirement account. But absent exceptions that do not apply here, a bankruptcy estate includes all property in which the debtor has a legal or equitable interest. *See* 11 U.S.C. § 541(a)(1). Morgan Stanley had a legal right to remit certain funds for a single purpose, but it failed to do so before Dorand filed for bankruptcy. And filing for bankruptcy "stops all collection efforts." *In re McLean*, 794 F.3d

1313, 1320 n.3 (11th Cir. 2015) (citation and internal quotation marks omitted). Dorand had an interest in the retirement account when he filed for bankruptcy, and the bankruptcy court correctly determined that the retirement account was part of Dorand's bankruptcy estate.

### C. The Alabama Judgment Did Not Create a Right to Setoff.

The creditors argue that the Alabama judgment created a right to setoff in favor of Morgan Stanley. But because the right to setoff cannot arise unless two parties owe mutual debts, and Dorand did not owe a debt to Morgan Stanley, the bankruptcy court correctly held that the judgment did not create a right to setoff.

The right to setoff is the right of parties "to cancel out mutual debts against one another in full or in part." *In re Patterson*, 967 F.2d 505, 508 (11th Cir. 1992). "The purpose of setoff is to avoid 'the absurdity of making A pay B when B owes A'" an equal or greater sum. *Id.* at 508–09 (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528 (1913)). The Bankruptcy Code preserves the right to set off prepetition debts. *See* 11 U.S.C. § 553. But "[s]ubstantive law, usually state law, determines the validity of the right." *Patterson*, 967 F.2d at 509.

Three elements must be present for a right to setoff to arise under section 553. First, the parties must owe mutual debts. 11 U.S.C. § 553(a). Second, the debts must have arisen before the debtor filed for bankruptcy. *Id.* And third, the setoff cannot fall within the exceptions listed in subsections 553(a)(1), (2), or (3). *Id.*

To be sure, the parties agree that Morgan Stanley owed a debt to Dorand. When a customer deposits funds into his bank account, the bank takes title to the money, and it owes a debt to its customer for the deposit amount. *See Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1302 (11th Cir. 2020) (explaining that "when an accountholder deposits money into his bank account, the bank takes title to the money").

But the parties dispute whether Dorand owed a debt to Morgan Stanley. The creditors argue that Dorand owed Morgan Stanley the value of the retirement account to reimburse Morgan Stanley for the debt it incurred under the judgment. Dorand responds that he never owed a debt to Morgan Stanley.

The judgment did not create a debt that Dorand owed to Morgan Stanley. Instead, it gave Morgan Stanley a limited right to transfer some of Dorand's funds to the state court clerk. Morgan Stanley did not have—and could not have—any obligation to pay the judgment from its own funds because the judgment was not a "personal judgment" against Morgan Stanley. *Wyers*, 762 So. 2d at 355–56 (explaining that "when a creditor's bill is brought to reach a debtor's assets in the hands of a third person," a personal judgment ordinarily "cannot be rendered against that third person"). The judgment did not—and could not—require Morgan Stanley to pay the judgment first and have Dorand reimburse it later. Because the judgment did not create a debt that Dorand owed to Morgan Stanley, the right to setoff never arose.

### D.  Neither the Full Faith and Credit Statute Nor Collateral Estoppel Prohibits the Bankruptcy Court's Ruling.

The creditors argue that the full faith and credit statute and collateral estoppel barred the bankruptcy court from ruling on Dorand's claim of exemption. Dorand responds that neither doctrine barred the bankruptcy court's ruling. We agree with Dorand.

The full faith and credit statute provides that "state judicial proceedings 'shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken.'" *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) (quoting 28 U.S.C. § 1738). As applied to judgments, "'the full faith and credit obligation is exacting.'" *V.L. v. E.L.*, 577 U.S. 404, 407 (2016) (quoting *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998)). "'A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land.'" *Id.* (quoting *Baker*, 522 U.S. at 233).

This appeal does not implicate the full faith and credit statute because Dorand did not ask the bankruptcy court to *ignore* or *set aside* the Alabama judgment. Instead, he made arguments about the meaning of that judgment—specifically, whether it terminated all of his rights to his retirement account. His arguments concern what the Alabama judgment accomplished. He never asked the bankruptcy court or this Court to *ignore* the judgment or set it aside.

The creditors also argue that Dorand is collaterally estopped from "claiming any exemption that he was denied by the Alabama judgment." "Collateral estoppel," or "issue preclusion," bars the "relitigation of an issue of fact or law that has been litigated and decided in a prior suit." *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003) (citation and internal quotation marks omitted). The doctrine is designed to "promot[e] judicial economy" and "protect[] litigants from the burden of relitigating an identical issue with the same party." *Id.* (citation and internal quotation marks omitted). We apply Alabama law to determine whether collateral estoppel applies. *See In re St. Laurent,* 991 F.2d 672, 675–76 (11th Cir. 1993). In Alabama, collateral estoppel has four elements: (1) the issue in the present action must be identical to the issue litigated in the prior action; (2) the issue must have been actually litigated in the prior action; (3) the resolution of the issue must have been a necessary part of the prior judgment; and (4) the same parties must be involved in the two actions. *Lee L. Saad Const. Co. v. DPF Architects, P.C.*, 851 So. 2d 507, 520 (Ala. 2002).

Collateral estoppel does not apply because it is not clear that resolution of the issue in this appeal—whether Dorand's retirement account was exempt—was a "necessary" part of the Alabama judgment. *See id.* The Alabama court denied Dorand's claim of exemption on the ground that the creditors "filed a proper contest to the claim of exemption, making both procedural and substantive challenges." But the court never specified whether it was denying Dorand's claim of exemption on procedural grounds, substantive grounds, or both. When a "judgment fails to distinguish as to

which of two or more independently adequate grounds is the one relied upon, it is impossible to determine with certainty what issues were in fact adjudicated, and the judgment has no preclusive effect." *In re St. Laurent*, 991 F.2d at 676. Accordingly, collateral estoppel does not apply.

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of Dorand.